**Cleotilde H. GONZALES a/k/a Tillie Gonzales, Appellant,**

v.

**THE AMERICAN POSTAL WORKERS UNION, AFL–CIO, Appellee.**

No. 04–96–00031–CV.

Court of Appeals of Texas, San Antonio.

April 16, 1997.

Rehearing Overruled May 21, 1997.

John Michael Doyle, San Antonio, Michael A. Chovanec, Michael A. Chovanec, P.C., San Antonio, for Appellant.

John E. Westcott, Joel S. Pace, Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

Cleotilde H. Gonzales filed suit against "the American Postal Workers Union," seeking to hold the national union vicariously liable for her damages arising out of an allegedly defamatory letter written and published by Gilbert Uriegas, a member of the national union and president of one of its local chapters. The trial court rendered summary judgment against Gonzales, and she appealed. We hold that a national union is not vicariously liable for the wrongful conduct of one of its members unless it authorizes or ratifies that conduct. Therefore, because the summary judgment proof conclusively establishes that The American Postal Workers Union, AFL–CIO did not participate in, authorize, or ratify Uriegas' conduct, we affirm the judgment in its favor.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 1994, while both Cleotilde Gonzales and Gilbert Uriegas were employees of the United States Postal Service, Uriegas wrote and distributed a letter regarding what he alleged to be unethical conduct by Gonzales. In the letter, Uriegas stated that he was writing the letter "to protect [him]self, as President of the [San Antonio Alamo Area Local/American Postal Workers Union]" from Gonzales. Uriegas signed the letter as president of the "San Antonio Alamo Area Local."

In December 1994, Gonzales sued Uriegas and "the American Postal Workers Union" for defamation. In her petition, Gonzales alleged that Uriegas was president of "the American Postal Workers Union," and he could be served at his place of employment, 812 South Presa in San Antonio, Texas. Gonzales also alleged that "the American Postal Workers Union" was located at the same address, and it could be served by

serving any of its officers. The return of service indicates the citation was served on Uriegas, individually, at 2595 Lorene # 103, San Antonio, Texas and, at the same time and address, on the "American Postal Workers Union By Serving Gilbert R. Uriegas." Thereafter, Uriegas and "the American Postal Workers Union," represented by different attorneys, timely answered Gonzales' suit, and discovery ensued.

Approximately eight months after suit was filed, "The American Postal Workers Union, AFL–CIO" filed an amended answer and motion for summary judgment, both of which claimed the union had been sued in the wrong name and capacity. As explained in the union's amended answer and in footnote 1 in its motion for summary judgment, Gonzales sued "the American Postal Workers Union," but the true name of the defendant was "The American Postal Workers Union, AFL–CIO."

In its motion for summary judgment, the union contended that it was not vicariously liable for the damages arising out of Uriegas' allegedly defamatory letter, because "The American Postal Workers Union, AFL–CIO" was an entity separate and distinct from the "San Antonio Alamo Area Local, American Postal Workers Union," and Uriegas, while an officer of the "San Antonio Alamo Area Local, American Postal Workers Union" was not an officer, employee, or agent of the "American Postal Workers Union, AFL–CIO," nor had that organization authorized or ratified Uriegas' conduct. The motion was supported with excerpts from Gonzales' deposition and the affidavits of Uriegas and Douglas C. Holbrook, the secretary-treasurer of The American Postal Workers Union, AFL–CIO.

Gonzales responded to the union's motion by contending that Uriegas was an agent of The American Postal Workers Union, AFL–CIO, and she attempted to support her assertion with copies of the local union's newsletter, the Alamo Area Dispatch; excerpts from Gonzales' deposition; and Gonzales' affidavit. At no point in this response did Gonzales suggest that "The American Postal Workers Union, AFL–CIO" was not a defendant or otherwise not entitled to move for

summary judgment. In reply to Gonzales' response, The American Postal Workers Union, AFL–CIO objected to Gonzales' summary judgment proof and sought leave to late file a second affidavit by Holbrook. At the summary judgment hearing, the trial court overruled the objections to Gonzales' proof, permitted the late filing of the second Holbrook affidavit, granted the motion for summary judgment, and severed the suit against The American Postal Workers Union, AFL–CIO from that against Uriegas.

Gonzales timely filed a motion for new trial. In this motion, Gonzales argued that the trial court's summary judgment in favor of "The American Postal Workers Union, AFL–CIO" was erroneous because that entity was not a party to the lawsuit and, while "the American Postal Workers Union" was a party and had been served, it had not moved for summary judgment. Attached to Gonzales' motion was her first amended petition, which again named as a defendant "the American Postal Workers Union" but which also alleged that this was an assumed name under Texas Rule of Civil Procedure 28. The American Postal Workers Union, AFL–CIO disagreed, stating in its response that "the American Postal Workers Union" was a common name for "The American Postal Workers Union, AFL–CIO," but it was not an assumed name or d.b.a., as those terms are defined by Texas law. Gonzales' motion was set for hearing on November 8, 1995.

On November 8, after The American Postal Workers Union, AFL–CIO filed a motion to substitute its true name for "the American Postal Workers Union" under Rule 28, TEX. R.CIV.P., the trial judge requested briefing on whether he could still grant this motion postjudgment. After receiving the requested briefing, and following a hearing on December 5, 1995, the trial court granted the Rule 28 motion, ordering that "the movant's true name, 'The American Postal Workers Union, AFL–CIO,' is hereby substituted into all documents and pleadings, including the order granted [sic] movant summary judgment, in place of its common name, 'The American Postal Workers Union.'"

## STANDARD OF REVIEW

We review a summary judgment *de novo*. Accordingly, we will uphold a summary judgment only if the summary judgment record establishes that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *Travis v. City of Mesquite*, 830 S.W.2d 94, 99–100 (Tex.1992); TEX. R.CIV.P. 166a(c). In deciding whether the summary judgment record establishes the absence of a genuine issue of material fact, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor. *Nixon v. Mr. Property Mgt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## DISCUSSION

■ In her first four points of error, Gonzales complains the trial court erred in rendering summary judgment in favor of The American Postal Workers Union, AFL–CIO, because it failed to meet its summary judgment burden of conclusively establishing that it was the same entity that Gonzales sued. We disagree.

As noted above, The American Postal Workers Union, AFL–CIO answered Gonzales' suit and moved for summary judgment, explaining in its amended answer and in footnote 1 of its motion for summary judgment that the true name for "the American Postal Workers Union" was "The American Postal Workers Union, AFL–CIO." In so doing, the national union judicially admitted, and at that point had conclusively established, that it and "the American Postal Workers Union" were one and the same entity. *See generally* Timothy Patton, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 6.02 (2d ed. 1996). Therefore, if upon receipt of the union's motion for summary judgment Gonzales believed "The American Postal Workers Union, AFL–CIO" had not in fact been sued, or was in fact a separate and distinct entity, it was incumbent upon her to raise the issue in her response to the motion for summary judgment. *See* TEX. R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677–78 (Tex.1979). She failed to meet this burden

and in fact failed to raise the issue until her motion for new trial. Moreover, even construing Gonzales' brief liberally, she has not presented any point of error or argument challenging either the trial court's authority to grant the Rule 28 motion after judgment or its ruling substituting "The American Postal Workers Union, AFL–CIO" for "The American Postal Workers Union" in all documents and pleadings. Therefore, pursuant to this ruling, the record establishes that Gonzales initially sued "The American Postal Workers Union, AFL–CIO," and it was this entity that moved for summary judgment. We therefore overrule Gonzales' first four points of error.

## AGENCY

In her fifth through eighth points of error, Gonzales argues the trial court erred in rendering summary judgment in favor of The American Postal Workers Union, AFL–CIO, because the union was not entitled to summary judgment on an agency theory unless it conclusively proved that Uriegas, as a union member, was not acting within the general scope, or in furtherance of, the purposes of the national union in writing and publishing the allegedly defamatory letter, and the summary judgment proof raises a fact issue in this respect. Again, we disagree.

■■■ "An unincorporated association is a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." *Cox v. Thee Evergreen Church,* 836 S.W.2d 167, 169 (Tex.1992). Although "[h]istorically, unincorporated associations were not considered separate legal entities," *id.,* it is now well-established that the members of an unincorporated association may be sued, " 'as to third parties, under the association's assumed name as a legal entity.' " *Id.* at 171. In that event, however, the First Amendment to the United States Constitution protects the right of association and precludes imposing liability on a national association for the actions of one or more members of a local chapter without a finding that the national association participated in, authorized, or ratified the conduct. *See Juhl v. Airington,* 936

S.W.2d 640, 642 (Tex.1996) (citing and quoting *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 931–32, 102 S.Ct. 3409, 3435–36, 73 L.Ed.2d 1215 (1982)). As our supreme court noted years ago:

> The legal responsibility of an unincorporated association for the wrongful conduct of one of its agents should not be substantially different from that of an ordinary principal. The general rule is one principal is not civilly liable to another for the tortious acts of an agent who acts for both parties with their consent. He is responsible, however, where there is collusion with the agent, active participation in the wrongful act, or the same is otherwise authorized or ratified.

*United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Borden,* 160 Tex. 203, 328 S.W.2d 739, 744 (1959); *see also Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 599 (Tex.App.—Houston [1st Dist.] 1991, no writ) ("members of an unincorporated association are not bound by the unauthorized or unratified representations of a member"); *Kuteman v. Lacy,* 144 S.W. 1184, 1186 (Tex.Civ.App.—Austin 1912, no writ) (lodge not bound by unauthorized and unratified representations and promises of one of its members); *Grand Temple and Tabernacle of Knights and Daughters of Tabor of the International Order of Twelve v. Johnson,* 135 S.W. 173, 175 (Tex.Civ.App.— San Antonio 1911, no writ) (grand body not liable for subordinate lodge member's acts when evidence established that acts were neither authorized by grand body nor in furtherance of its business).

■■■ In this case, the summary judgment evidence conclusively establishes that The American Postal Workers Union, AFL–CIO did not collude with Uriegas; it did not actively participate in writing or publishing the allegedly defamatory letter; and it did not authorize or ratify Uriegas' doing so. The trial court thus correctly granted summary judgment against Gonzales in her suit against the national union on its agency theory, and we overrule Gonzales' fifth through eighth points of error.

## OPPORTUNITY TO REPLEAD DERIVATIVE LIABILITY

In her ninth and tenth points of error, Gonzales argues that the trial court erred in granting summary judgment without giving her an opportunity to replead, as required by *Texas Dept. of Corrections v. Herring,* 513 S.W.2d 6 (Tex.1974), and the interest of justice. We disagree.

 We recognize that "the protective features of special exception procedure should not be circumvented by a motion for summary judgment *on the pleadings* where plaintiff's pleadings ... fail to state a cause of action." *Herring,* 513 S.W.2d at 10 (emphasis added). However, in this case, unlike *Herring* and similar cases, The American Postal Workers Union, AFL–CIO did not move for judgment on the pleadings or otherwise allege that Gonzales' petition failed to state a cause of action. Rather, the union moved for summary judgment on the ground that it could not be held vicariously liable unless it in some manner authorized or ratified Uriegas' conduct, and it supported its motion with proof that it did neither. The union thus did not obtain a summary judgment because of Gonzales' failure to state a cause of action but because of her failure to raise a material fact issue on any viable legal theory for holding it vicariously liable. In these circumstances, the law requires neither special exceptions nor a remand so that Gonzales may replead. Gonzales' ninth point of error is therefore overruled.

 Gonzales also misperceives the law relating to remands in the interest of justice. "It is well settled that an errorless judgment of a trial court cannot be reversed in the interest of justice or to permit the losing party to have another trial." *Uselton v. State,* 499 S.W.2d 92, 99 (Tex.1973). Rather, a remand in the interest of justice is appropriate when the judgment is erroneous, but rendition would for some reason be unfair. *See Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 (Tex.1992). Because this case does not present reversible error, we overrule Gonzales' ninth point of error.

## CONCLUSION

As set forth in its motion for summary judgment, The American Postal Workers Union, AFL–CIO cannot be held vicariously liable for the wrongful conduct of one of its members unless it somehow authorized or ratified that conduct. Because the summary judgment proof conclusively establishes that the union did neither, the trial court correctly rendered a summary judgment in its favor without first requiring special exceptions or affording Gonzales an opportunity to replead. Finally, in the absence of reversible error, Gonzales is not entitled to a remand in the interest of justice. We therefore affirm the trial court's judgment.